IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK J. WHALING,
    Petitioner,

v.

ROBERT D. SHANNON, et al.,
    Respondents.

Civil Action No. 10-83 Erie

District Judge Sean J. McLaughlin
Magistrate Judge Susan Paradise Baxter

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II. REPORT[1]

Petitioner Mark J. Whaling is a state prisoner currently incarcerated at the State Correctional Institution Forest. He is serving a judgment of sentence that was imposed by the Court of Common Pleas of Erie County on November 5, 2003. He has filed with this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raises the following four grounds for relief:

    Claim 1    His rights under the Confrontation Clause were violated when a "police witness introduced prejudicial hearsay of a non-testifying witness [a confidential informant] to bolster co-defendant's [Cecelia Egli's] testimony as to identification."

    Claim 2    "4th Amendment – Illegal Seizure/Detention of the person without a lawful warrant or probable cause. Petitioner was seized by police outside a residence where a warrant was being executed, he was searched (found to

---

[1] Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which will be cited to as "CP Dkt. No. __."

1

| | |
|---|---|
| | have no contraband) was handcuffed and detained – then arrested even though he was not named in the warrant and was not a resident of the home. [Two] other females with Petitioner also had no contraband but they were released after [the] scene was secured, yet petitioner was forced to remain for hours and taken to jail after drugs were found in home." |
| Claim 3 | "4th Amendment – Illegal search warrant allowing all persons present search authority. Police deliberately falsified search warrant affidavit by withholding material information in order to obtain an 'all persons warrant' where police knew the legal names of suspects (admitted at trial) but claimed not to know in warrant affidavit." |
| Claim 4 | "6th and 14th Amendment – Ineffective assistance of counsel at trial and on appeal" for "refus[ing] to present the above constitutional claims in state court, resulting in petitioner having to present said claims *pro se*." |

[ECF No. 1 at 2-3].

### A. Relevant Background

On October 23, 2002, Lt. Joseph Kress obtained a warrant to search "[t]he residence at 2126 Parade Street and the person of Cecelia Egli and all persons present at the time of the search." In the affidavit of probable cause attached to the search warrant application, Lt. Kress explained that a confidential informant had notified the police that Egli was selling crack cocaine from her residence at 2126 Parade Street. Lt. Kress further explained that:

> On 10/19/02 [the confidential informant] made a controlled buy of crack cocaine from the residence of Cecelia Egli at 2126 Parade Street … Once inside the CI was met by a new doorman, a white male known as Guido. Inside the residence was Cecelia who provided the CI with a quantity of crack cocaine. The substance was field tested for cocaine by D/Lt. Kress.
>
> Within the last 72 hours [the confidential informant] made a controlled buy of crack cocaine from the residence at 2126 Parade Street, Erie, PA. The CI purchased a quantity of crack cocaine from the white doorman known as Guido. The substance was turned over to Cpl. Robert Toski and D/Lt. Kress who field tested the substance and found it positive for cocaine.

2

> Based on the totality of the above listed facts and circumstances your Affiant requests that a search warrant be granted for the entire residence at 2126 Parade Street, Erie, PA. Your Affiant respectfully requests that the warrant include the persons of Cecelia Egli, Guido LNU and all other persons present during the time of the search.

(Application for Search Warrant and Affidavit of Probable Cause, attached at App. B to CP Dkt. No. 8).

On October 24, 2002, several detectives were conducting their surveillance of 2126 Parade Street. At around 7:40 p.m., Whaling, who was Egli's live-in boyfriend, and two females exited the residence. Detectives Benacci, Fischer, and Dacus approached them and loudly informed them that they had a search warrant for the residence. Whaling was ordered to the ground. Egli would not open the door and the detectives eventually forcefully entered the house. They found 53 grams of crack cocaine. The bedroom shared by Egli and Whaling contained scales, cutting agents, a metal crack pipe, plastic baggies with cocaine residue, and a police scanner. Just off the kitchen area the police found a bottle containing a "sizeable" amount of crack cocaine. Above a dog kennel the police retrieved three "rocks" of crack cocaine. Inside the stairwell of the basement the police found $371.

The police arrested Egli and Whaling and charged them with numerous drug and related crimes. Gene P. Placidi, Esquire, was appointed to represent Whaling. He filed a motion to suppress the evidence seized from 2126 Parade Street in which it was argued that the police did not comply with Rule 207 of the Pennsylvania Rules of Criminal Procedure before making forcible entry into the residence. (CP Dkt. No. 2). The court held a hearing on the pre-trial motions on June 30, 2003. On that same day, the court issued an Order denying the motion to suppress because "clearly several law enforcement officers were loudly announcing their presence and possession of a search warrant and waited a reasonable period of time before forcibly entering the premises." (CP Dkt. No. 2C).

Whaling's two-day trial commenced on September 17, 2003. Egli testified against him, as did officers who were involved in his arrest and the search of 2126 Parade Street. Egli's testimony was the most damning, as she directly implicated him in the substantial drug operation that they engaged in out of their house. She also testified that Whaling was her boyfriend and that he had moved into her house several months earlier. The jury was informed that in exchange for her cooperation the Commonwealth was reducing a charge that had been filed against her.

Whaling called no witnesses. His defense was to attack the credibility of Egli. He also attempted to show, through cross-examination of the Commonwealth's witnesses, that he did not live in Egli's home and thus could not be held criminally responsible for all of the drugs and paraphernalia that the police found there. In support of this line of argument, Attorney Placidi made the point several times that in the three-page affidavit of probable cause that Lt. Kress had prepared, Egli is identified as the resident of the home at 2126 Parade Street and Whaling's name is never mentioned. Egli was clear in her testimony, however, that she and Whaling lived together at 2126 Parade Street and together they ran the drug operation out of the house. In addition, during the book process, Whaling had given his home address as 2126 Parade Street. Moreover, Egli testified that Whaling sometimes went by the name "Guido," thus indicating that he was in fact one of the individuals that was mentioned in the affidavit of probable cause. Lt. Kress also testified that the confidential informant told him that he/she "knew Mr. Whaling by the name of Guido." (9/18/03 Trial Tr. at 116). Placidi objected to this testimony on hearsay grounds, but the court overruled the objection. (Id.)

The jury found Whaling guilty of possession of crack cocaine, possession with intent to deliver crack cocaine, possession of drug paraphernalia, and conspiracy to possess with the intent to deliver crack cocaine. On November 5, 2003, the court sentenced Whaling to an aggregate term of

4

imprisonment of 7 ½ to 25 years to be followed by a one-year period of incarceration. (The court resentenced Whaling on October 31, 2006, to an aggregate sentence of 7 to 19 years' imprisonment.)

After Whaling's post-trial motion was denied (CP Dkt. No. 5), he filed, through Attorney Placidi, an appeal with the Superior Court of Pennsylvania. He raised several claims, with only the following one being relevant to this proceeding:

> The trial court erred in overruling [the defense's] hearsay objection and in allowing Lieutenant Kress to testify that the confidential informant who provided the information with regard to the purchase of drugs from the residence at 2126 Parade Street from an individual known as Guido, knew [Whaling] by the name of Guido.

(CP Dkt. No. 7B, Commonwealth v. Whaling, 2195 WDA 2003, slip op. at 6 (Pa.Super. Dec. 21, 2004), quoting Appellant's Brief at 29). This allegation is regarding the same testimony at issue in Claim I of the instant petition.[2]

In a Memorandum issued December 21, 2004, the Superior Court denied each of Whaling's claims on the merits. On August 24, 2005, Whaling filed a *pro se* motion for collateral relief in the Court of Common Pleas pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, and an accompanying 25-page brief. (CP Dkt. No. 8). He raised numerous claims in support of his motion, including all of the claims that he now raises before this Court.

The PCRA Court appointed several attorneys to represent Whaling who had to withdraw for various reasons. It eventually appointed A.J. Adams, Esquire, to represent him. On March 7, 2007, Attorney Adams filed an Amended PCRA motion. In that motion, Adams did not raise the claims that Whaling had raised in his *pro se* motion. Instead, Adams raised a single claim challenging Whaling's

---

[2] There is no indication that Whaling framed this claim before the Superior Court as one implicating his Sixth Amendment rights under the Confrontation Clause.

5

convictions: that a letter recently written by Egli provided post-verdict evidence of Whaling's innocence.

On June 20, 2007, the court denied the amended PCRA motion on the merits. (CP Dkt. No. 28, Commonwealth v. Whaling, No. 571 of 2003, slip op. (CP Erie, May 30, 2007), and CP Dkt. No. 29). Whaling filed a motion to proceed *pro se* on appeal and filed a Rule 1925(b) Statement. At a hearing on September 5, 2007, he changed his mind and stated his desire not to proceed *pro se* and moved for appointment of new counsel. The PCRA Court denied his oral motion and ordered that Adams remain as counsel of record. Notwithstanding the PCRA Court's directive that Adams remain as appellate counsel, Whaling himself filed a *pro se* appellate brief. On August 26, 2008, the Superior Court remanded the case to the PCRA Court "so that [Whaling] can be provided with counsel, either by the entrance of an appearance by prior appellate counsel or by appointment of new counsel." (CP Dkt. No. 49, Commonwealth v. Whaling, 1528 WDA 2007, slip op. at 7 (Pa.Super. Aug. 26, 2008)).

In accordance with the Superior Court's directive, the PCRA Court appointed Garrett Taylor, Esquire, to represent Whaling. Taylor filed a brief with the Superior Court, in which it was argued that the PCRA Court erred in denying the claim that had been set forth in the amended PCRA motion that had been filed by Adams. The Superior Court denied this claim on the merits:

> [T]he PCRA court noted that the trial record contradicts Egli's averments [in her letter] that at trial, she was "under duress," and "high" on "pain medication" when she mistakenly identified Appellant as Guido. During cross-examination, Egli admitted to her continuing addiction to drugs but stated that she was not under the influence of any illegal drugs at the time of her testimony. N.T. Trial, 9/18/03, at 61. She further claimed that she took "pain killers" because she was suffering "from arthritis and back problems." Id. Judge Cunningham [the PCRA Court], who also presided over Appellant's jury trial, astutely observed:
>
>> Ms. Egli's trial testimony was coherent and not consistent with someone who was under the influence of a narcotic to the degree that she did not

6

> know was she was doing. During her lengthy testimony, Egli was able to
> understand the questions posed and formulate an appropriate response
> without delay. Notably, the jury had the information about Egli's use of
> painkillers in making its credibility determinations.
>
> The patent deficiencies of the letter recanting Ms. Egli's testimony make
> the evidence not credible. The letter is certainly less credible than the
> testimony Egli gave under oath, under the supervision of the court and
> under the watchful eyes of the jurors. Because the recanted evidence is
> not reliable, Petitioner cannot be granted a new trial.
>
> Notice of Intent at 5-6.
>
> We conclude that the PCRA Court properly considered Egli's recantation testimony in light of the relevant prejudice standard and concur with that court's determination that even if Egli's letter recanting her identification of Appellant as "Guido" was legitimate and credible, it would not compel a different outcome. Id. at 6-9…. Here, as the PCRA court recognized, Egli's trial testimony that Appellant was also known as "Guido," alone did not convict Appellant.
>
> Other Commonwealth witnesses, including Lieutenant Kress and Detectives Matthew Benacci and Matthew Fischer, testified to their familiarity with Appellant even prior to the October 24, 2002 surveillance of the Parade Street residence. N.T. Trial, 9/18/03, at 7, 15, 80. Lieutenant Kress stated, "I knew in late July, early August that [Appellant] was at that residence quite frequently when I would make passes by." Id. at 80. Detective Fischer testified that just prior to executing the search warrant that evening, he recognized the male exiting the residence as Appellant. Id. at 15, 19. When, during processing, the booking officer asked Appellant for his address, Appellant "indicated that he resided at 2126 Parade Street." Id. at 98. Since we find the PCRA court's findings amply supported by the evidence, we disagree with Appellant's assertion that a remand is necessary to conduct an evidentiary hearing. Hence, no relief is due.

(CP Dkt. No. 53, Commonwealth v. Whaling, 1528 WDA 2007, slip op. at 7-9 (Pa.Super. May 15, 2009)).

Whaling, through Attorney Taylor, also claimed that the PCRA court had erred in denying him relief because his previous PCRA counsel had been ineffective. (Id. at 9). In denying this claim, the Superior Court held:

7

> [W]e conclude that Appellant's claim of ineffective assistance of counsel affords him no relief. Appellant alleges that: (1) aside from Egli's recantation letter, there is no evidence than any claims advanced in Appellant's initial *pro se* petition have been meaningfully reviewed; (2) Mr. Adams's "purported amended PCRA 'letter'" failed to comply with the requirements of PCRA procedure; (3) the PCRA court utilized improper procedure in denying the "amended PCRA letter" as it occurred after the court "purport[ed] to grant," in part, the initial PCRA to the extent that a sentencing hearing was scheduled; and (4) justice requires the case to be remanded so that "Appellant can substantively review the initial PCRA and determine whether additional claims … should be raised." Appellant's brief at 17-18.
>
> - - -
>
> Notwithstanding the irregular procedural history in the instant case, Appellant fails to set forth any specific claim or arguable merit that prior appellate counsel should have raised. Nor does he further develop the requisite three-pronged ineffectiveness analysis. Consequently, this issue is without merit. Based on the foregoing, we affirm the denial of PCRA relief.

(Id. at 10-11).

Whaling filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. On December 30, 2009, it denied the petition. (CP Dkt. No. 52).

Whaling next commenced this case by filing his petition for writ of habeas corpus [ECF No. 1] and raising the four claims outlined at the beginning of this Report and Recommendation. Respondents have filed their Answer [ECF No. 18], to which Whaling has filed a Reply [ECF No. 26].[3]

### B. Discussion[4]

---

[3] Respondents contend, *inter alia*, that the petition should be dismissed because Whaling filed it outside of the applicable statute of limitations, which is codified at 28 U.S.C. § 2244(d). Their calculation is incorrect, as Whaling points out in his Reply [ECF No. 26 at 2, 6-8].

[4] It appears that Whaling's claims are procedurally defaulted because, although he raised them in the *pro se* PCRA motion that he initially filed, his subsequent court-appointed counsel did not pursue those claims either before the PCRA Court or the Superior Court. However, Respondents incorrectly state in their Answer that Whaling exhausted his claims and did not procedurally default them. Although the Court has the authority to raise the issue of procedural default *sua sponte*, it will not do so under the circumstances and because Whaling's claims plainly have no merit and therefore can be denied for that reason.

8

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Whaling's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

**Claim I**

In Claim I, Whaling contends that the introduction, through Lt. Kress's testimony, of the confidential informant's statement that he/she knew Whaling by the name of "Guido," violated his Sixth Amendment rights under the Confrontation Clause. As noted above, this claim coincides with the claim of trial court error that Whaling raised in his direct appeal, although now he contends that the alleged error is one of constitutional dimension.

This claim has no merit. Even if the introduction of the confidential informant's statement implicated Whaling's rights under the Confrontation Clause, any error was harmless. The harmless error evaluation applicable to this claim is that which is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993), which requires that in order to grant habeas relief a federal habeas court must find that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637, quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). See also Fry v. Pliler, 551 U.S. 112 (2007). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of

9

federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995) (quotation marks omitted); Bond v. Beard, 539 F.3d 256, 276 (3d Cir. 2008). This Court is not in grave doubt that the admission of the confidential informant's statement had a "substantial and injurious effect or influence" on the jury's verdicts. As the Superior Court pointed out in denying the related state-law claim on direct appeal, any error was harmless because Egli already had testified that Whaling sometimes went by the name Guido. (CP Dkt. No. 7B, Whaling, 2195 WDA 2003, slip op. at 7 ("[G]iven the jury's exposure to "Guido" [through Egli's testimony] prior in time to the complained-of examination of Lt. Kress by the assistant district attorney on the same topic, we find Appellant's present objection to be meritless."), citing Commonwealth v. Tumminello, 437 A.2d 435 (Pa.Super. 1987) ("Consequently, even if we assume for the sake of argument that Det. Morton's testimony was improperly admitted, '[e]rroneously admitted evidence is harmless if there is other evidence to establish the same facts.' Such is the case here.")). Moreover, she testified that Whaling was her live-in boyfriend and explained the drug operation that they ran together out of 2126 Parade Street.

Based upon the foregoing, Claim I should be denied.

**Claim II**

In Claim II, Whaling contends that his Fourth Amendment rights were violated because the police lacked probable cause to arrest him. This claim has no merit because even if there were issues with regard to probable cause at the time of his arrest (a point Whaling has not demonstrated), an arrest based upon a defective probable cause affidavit or the lack of probable cause would not entitle him relief from his subsequent conviction. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 119 (1975) (illegal arrest or

10

detention does not void a subsequent conviction; although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause); United States v. Farnsworth, 203 F.App'x 110, 112-13 (3d Cir. 2008). Therefore, Whaling is not entitled to habeas relief on this claim.

Based upon the foregoing, Claim II should be denied.

### Claim III

In Claim III, Whaling contends that the introduction of the evidence seized from 2126 Parade Street violated his Fourth Amendment rights because the police committed fraud in obtaining the warrant to search the home, and because his name was not listed in the affidavit of probable cause that supported the warrant application. This claim is not cognizable in federal habeas. In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that a federal court may not grant a state prisoner habeas corpus relief on a claim that evidence obtained in an unconstitutional search or seizure was introduced at his trial if the State had already provided an "opportunity for full and fair litigation" of the Fourth Amendment claim, explaining:

> [T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that

11

law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.

In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 493-94 (footnotes and internal citations omitted). See also Deputy v. Taylor, 19 F.3d 1485, 1490 (3d Cir. 1994) (rejecting a Fourth Amendment claim because the petitioner had had a full and fair opportunity to litigate it in the state court, and noting that under Stone, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). It cannot be disputed that Whaling had a full and fair opportunity to litigate his Fourth Amendment claim in the state court. Therefore, this claim is not cognizable in habeas.

Based upon all of the forgoing, Claims III must be denied.

**Claims IV**

In his final claim, Whaling contends that his Sixth and Fourteenth Amendment rights were violated because the "gross ineffective representation and advocacy of [his] numerous attorneys amounted to no representation at all where his attorneys refused to present the above constitutional claims in state court, resulting in [him] having to present said claims *pro-se*." [ECF No. 1 at 3]. Ineffective assistance claims are analyzed under the familiar two-part test set forth in Strickland v.

12

Washington, 466 U.S. 668 (1984).[5]  Under Strickland, Whaling first must show that his counsel's representation fell below an objective standard of reasonableness.  466 U.S. at 688.  The law presumes that his counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted).

Strickland also requires that Whaling demonstrate that he was prejudiced by his counsel's alleged deficient performance.[6]  This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his direct appeal] proceeding would have been different."  Id. at 694.  As the Third Circuit Court recently explained:

> [I]t is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  [Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 787 (2011)] (citing Strickland, 466 U.S. at 693).  Counsel's errors must be "so serious as to deprive the defendant of a fair trial."  Id. at 787-88 (citing Strickland, 466 U.S. at 687).  *The likelihood of a different result must be substantial, not just conceivable*.  Id.

---

[5]     The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).

[6]     The Court in Strickland noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order.  466 U.S. at 697.  Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, this course should be followed.  Id.

13

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (emphasis added). When a petitioner is contending that his appellate counsel was ineffective, he must show that there is a reasonable probability that, but for counsel's alleged ineffectiveness, the appellate court would have reversed his judgment of sentence. See United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000).

Whaling's primary complaint in Claim IV is with the conduct of his PCRA counsel (most notably Attorney Adams, who refused to raise the claims that he had put forth in his *pro se* PCRA motion). Whaling did not have a federal constitutional right to counsel during his state post-conviction proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Therefore, he cannot receive federal habeas relief on a claim that his PCRA counsel were ineffective. 28 U.S.C. § 2254(a).

To the extent that Whaling is claiming that Attorney Placidi provided him with ineffective assistance at trial and/or in his direct appeal for failing to raise the issues in Claims I, II, and III, that claim also fails. He has not overcome Strickland's presumption that Placidi was effective, 466 U.S. at 688-89, nor has he met his burden of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." Id. at 694. See also id. at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable."); Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel is not ineffective for failing to raise meritless claims). As set forth above, Claim I (the Confrontation Clause Claim) has no merit because any error was harmless. As for Claim II, even if Placidi had raised an issue about Whaling's alleged improper arrest, it is not reasonably probable that the outcome of his trial would have been different because *no evidence was seized from him during that arrest*. Rather, the evidence that the Commonwealth relied upon was seized during the search of the home Whaling shared with Egli at 2126 Parade Street. Finally, Whaling has not shown that Placidi was ineffective in litigating issues related to

the suppression of the evidence seized from 2126 Parade Street (Claim III). He has presented no evidence to support his allegation that the police committed fraud in obtaining the warrant to search, or that there was an issue that Placidi failed to raise that would have resulted in the suppression of the seized evidence.

Based upon all of the foregoing, Claim IV should be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether each of Whaling's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and

Recommendation. Failure to do so will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 27, 2012

cc: The Honorable Sean J. McLaughlin
     United States District Judge